UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| YOUTUBE, L.L.C., a Delaware Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CHRISTOPHER L. BRADY, an individual,<br><br>　　　　Defendant. | CASE NO.:  19-353<br><br>COMPLAINT FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT – 17 U.S.C. § 512(f)<br><br>DEMAND FOR JURY TRIAL |

Defendant, Christopher L. Brady ("Brady), has repeatedly attempted to harass and extort money from YouTube content creators through bogus allegations of copyright infringement.  This lawsuit seeks to hold him accountable for that misconduct, and for the damage he has caused to YouTube.

In 1998, Congress enacted the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA"), to provide a framework for addressing claims of online copyright infringement.  In general, the DMCA immunizes online service providers from claims of copyright infringement based on materials uploaded to the services by users, if the services promptly remove allegedly infringing materials upon receipt of notices from copyright holders.  Through these notices, the content of which is statutorily prescribed, copyright holders are able to secure the expeditious removal of allegedly infringing materials from online services without the need to prove a claim of infringement in court. Users that receive infringement notices they contend are incorrect may file a counter notification by providing their name, address, and telephone number, and consent to service of process by the complaining party.

Congress also recognized that these "takedown notices" could be used maliciously to secure the removal of content that was not legitimately claimed to be infringing.  Accordingly, it

included a provision in the DMCA authorizing those aggrieved by fraudulent notices to bring an action against the sender for damages. This is such an action.

Plaintiff YouTube, L.L.C. ("YouTube") alleges on personal knowledge as to its own acts and on information and belief as to the actions of others, as follows:

## THE PARTIES

1. Plaintiff YouTube is a Delaware Limited Liability Company with its principal place of business in San Bruno, California. As a global destination for public, online video, YouTube has over 2 billion monthly logged-in users. YouTube offers a free online platform that allows users to post videos and to watch videos posted by others. Users organize their videos into channels that can have millions of subscribers and some become major media businesses in their own right. Since its founding in 2005, YouTube has had a profound impact on commerce, culture, and politics in this country and around the world. It has enabled first-hand reporting from war zones and inside repressive regimes, allowed unknown performers and filmmakers to rise to fame, inspired laughter at the antics of dancing babies and skateboarding cats, let students of all ages audit classes at leading universities, and given creators of all sorts a powerful way to promote their work to a global audience.

2. Defendant Christopher Brady is an individual residing in Omaha, Nebraska. Brady has sent YouTube dozens of DMCA takedown notices, falsely claiming that material posted by users to the YouTube service infringes his supposed copyrights. Brady has submitted these notices as part of a scheme to harass and extort money from the users that he falsely accuses of infringement. Brady has also threatened to send additional fraudulent notices to YouTube and to cause the wrongful termination of users' YouTube accounts unless the users pay him off. And he

has misused the personal information users have supplied when availing themselves of the DMCA's counter notification procedure.

## JURISDICTION AND VENUE

3. This Court has original and exclusive jurisdiction for this matter under 28 U.S.C. § 1338 as this is a civil action arising under an Act of Congress governing copyrights, specifically under 17 U.S.C. § 512(f) of the Copyright Act.

4. Venue in this judicial district is proper under 28 U.S.C. § 1400(a) as this is a district in which the defendant resides or may be found.

## BACKGROUND

### YouTube and its DMCA Processes

5. YouTube provides an online video service that hosts and makes accessible to the world hundreds of millions of videos. More than 500 hours of new video are uploaded to the service every minute.

6. In accordance with the DMCA, YouTube has registered an agent with the U.S. Copyright Office to receive notices of alleged infringement from copyright holders.

7. To trigger the DMCA's takedown procedure, a copyright holder must send a notice of alleged infringement to YouTube's registered agent that includes substantially the following information:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

   (iii) Identification of the material that is claimed to be infringing and information reasonably sufficient to permit the service provider to locate the material;

   (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted;

   (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

   (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

8. YouTube facilitates the submission of takedown notices via a webform on its site, into which a complaining party can easily submit the relevant information. To submit a takedown notice using the form, parties must affirmatively check a box next to a statement that reads : "I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages."

9. YouTube receives thousands of DMCA takedown requests each week through its online webform. It also receives notices by email, postal mail, and facsimile. YouTube invests millions of dollars each year to process these notices and to promptly remove allegedly infringing materials from the platform.

10. YouTube has also developed and maintains a robust policy regarding repeat infringers on its platform. If a user uploads a video for which YouTube receives a notice of alleged

infringement, and the user does not counter the accusation by following the procedure set forth in the DMCA, that user is assessed a "strike" under YouTube's policy. In general, those who accumulate more than two strikes have their YouTube accounts terminated. Such terminations are made pursuant to YouTube's terms of service agreement with its users, which specifically call out the potential for termination based on repeated instances or allegations of copyright infringement.

11. Although users agree that termination of their accounts is a possibility, such terminations can carry significant consequences for users. Users whose accounts are terminated are no longer able to upload videos to the service. Videos they have previously uploaded are removed from public view. Users in the YouTube Partner Program lose the ability to earn revenue from advertising shown in connection with their videos.

12. Today, millions of channels from over 90 different countries earn revenue from their videos—including independent musicians and creators who are, in essence, small local businesses. In many cases, the revenue generated from their YouTube channel is their principal source of income. From 2017 to 2018, the number of channels earning more than $100,000 per year on YouTube is up 40%, and the number of channels earning more than $10,000 annually grew by more than 35%. For users who have spent months or years building substantial audiences and earning money through advertising revenues from their videos, the termination of their YouTube account based on accumulated copyright strikes can have a serious impact.

## Abuse of the DMCA Takedown Process

13. Unscrupulous individuals are increasingly seeking to exploit the DMCA takedown process for illicit purposes. These individuals know that YouTube promptly removes allegedly infringing content in response to DMCA takedown notices, that it assesses strikes to the alleged infringers, and that it terminates the accounts of users who accumulate multiple strikes, often with

severe consequences to the account holders. With that knowledge, these individuals can use bogus notices of alleged infringement as weapons.

14. For example, an individual who objects to the contents of a given video may be able to cause YouTube to remove that video by submitting a notice of alleged infringement, without regard to whether the video actually infringes a copyright or whether the individual actually holds a copyright. While YouTube screens the notices it receives for such machinations, in many cases, individuals go to great lengths to mask their identities and make bogus notices appear legitimate.

15. Equally if not more problematic are situations in which an individual, motivated by avarice or animus, sends knowingly false notices of alleged infringement in the hopes of causing YouTube to terminate a user's account for accumulated strikes. As noted, the consequences to users from such contrived terminations can be severe. Again, YouTube works hard to prevent this sort of abuse, but sometimes does not succeed.

16. Further abuse can arise because of the DMCA's counter notification process. Under the DMCA, users who believe that their content was removed because of an improper takedown notice may ask YouTube to restore the content pending resolution of the question of infringement. To trigger the counter notification process, a user must supply their name, address and phone number to YouTube, provide details of the allegedly wrongful takedown notice, and consent to be sued by the original complainant. In accordance with the DMCA, YouTube forwards a copy of complete and valid counter notifications to the original complainant. Instead of using the personal information in a counter notification for purposes of resolving an infringement dispute, abusive complainants may use it for purposes of harassment.

Gaming-Related Videos

17. YouTube users have uploaded an enormous number of videos to the service that relate to online video game playing. A significant number of these focus in some way on Minecraft, a popular online adventure game in which users can build or modify the game-playing environment. Minecraft videos run the gamut from those uploaded by the game developer itself, to videos featuring users instructing others on the basics of the game, providing advice on overcoming specific in-game obstacles, or highlighting their own creations, experiences, and competitions.

18. Many users develop loyal followings on YouTube through their Minecraft videos. These users receive feedback from their audience using the comments, live chat, and other community tools offered by the service, and often their subscribers use these features to communicate suggestions, requests, praise, or anything else they'd like with the channel operators. Users that join the YouTube Partner Program can also earn revenue from advertising shown in connection with their videos.

19. Three Minecraft-related accounts on YouTube are operated by users with the account names "Kenzo", "ObbyRaidz", and "Cxlvxn." Kenzo has uploaded more than 300 videos and has an audience of more than 60,000 YouTube users who have chosen to subscribe to his channel. ObbyRaidz has uploaded over 100 videos and has over 10,000 subscribers. Cxlvxn has uploaded approximately 500 videos, and has approximately 20,000 subscribers. Additionally, as is common among gaming-themed channels, all three of these users frequently livestream videos without saving them on their channels. All three are also members of the YouTube Partner Program and are eligible to earn revenue from advertising shown in connection with their videos.

<u>Defendant Brady's Extortionate Behavior</u>

20. Defendant Brady targeted the YouTube accounts of Kenzo and ObbyRaidz, among others, in an extortionate scheme.

21. In January 2019, Defendant Brady, using several falsified identities, sent YouTube multiple notices of alleged copyright infringement pursuant to the DMCA, claiming that two videos uploaded by Kenzo and two videos uploaded by ObbyRaidz supposedly infringed copyrights that he owned.

22. Defendant Brady's notices of alleged infringement included the various representations required under the DMCA. Brady identified the specific locations of the videos posted by Kenzo and ObbyRaidz. He represented that he was the original creator of those videos, that he held the copyright to them, that the videos posted by Kenzo and ObbyRaidz infringed his copyrights, and that each of his notices was accurate. And he certified: "UNDER PENALTY OF PERJURY, I am authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." Brady even included links to other copies of the videos in question as "proof" that he, rather than Kenzo and ObbyRaidz, had created them.

23. Defendant Brady's notices of alleged infringement were fraudulent. The videos posted by Kenzo and ObbyRaidz that Brady identified in his notices did not infringe any copyright supposedly owned by Brady. Brady knew that at the time he sent the notices. Brady also knew that did not hold the copyright to the videos he identified as his own in the notices. His certifications under penalty of perjury in the notices were knowingly false.

24. Defendant Brady sent the notices of alleged infringement for the improper purpose of inducing YouTube to remove the identified videos and assess unwarranted copyright strikes on the Kenzo and ObbyRaidz accounts.

25. Upon receipt of Defendant Brady's notices of alleged infringement, and unaware of their fraudulent nature, YouTube removed the videos that Brady identified as allegedly infringing in the notices. YouTube also assessed copyright strikes on the Kenzo and ObbyRaidz accounts.

26. On January 29, 2019, shortly after sending YouTube the notices of alleged infringement, Defendant Brady, masking his identity, sent a message to ObbyRaidz that read:

> Hi Obby
>
> We striked you. Our request is $150 PayPal, or $75 [bitcoin]. You may send the money via goods/services if you do not think we will cancel or hold up our end of the deal.
>
> Once we receive our payment we will cancel both strikes on your channel. . . .
>
> If you decide not to pay us, we will file a 3rd strike . . . Well give you a very short amount of time to make your decision.

27. Having submitted knowingly false notices of alleged infringement regarding ObbyRaidz' videos, Defendant Brady offered to rescind those notices (so as to prompt YouTube to reinstate the videos and remove the strikes) if ObbyRaidz made an unwarranted payment to him.

28. Similarly, Defendant Brady, masking his identity, contacted Kenzo and demanded $300 via Paypal or $200 in bitcoin to rescind the notices of alleged infringement he had sent regarding Kenzo's videos. Brady threatened in that message that if Kenzo did not comply, Brady would send additional notices of alleged infringement, resulting in assessment of additional strikes and the termination of Kenzo's account.

29. Defendant Brady participates in the Minecraft gaming community and appears to have interacted within the game with various YouTube users including Kenzo. Brady's

extortionate and harassing activities described here may, at least in part, be motivated by his failings in his Minecraft interactions.

30. YouTube did not learn of Defendant Brady's fraud and attempted extortion until the users, Kenzo and ObbyRaidz' publicized their experiences. YouTube immediately investigated the matter, restored the videos in question, and removed the strikes that had been assessed to their accounts.

## Defendant Brady's Abuse of the Counter Notification Process

31. Between June 29, 2019 and July 3, 2019, Defendant Brady submitted four more DMCA takedown notices to YouTube, this time targeting the Cxlvxn channel. Again, these notices were fraudulent. The videos posted by Cxlvxn did not infringe any copyright supposedly owned by Brady. Brady knew that at the time he sent the notices. Brady also knew that he did not hold the copyright to the videos he identified as his own in the takedown notices. His certifications under penalty of perjury in the notices were knowingly false.

32. A review of Defendant Brady's and Cxlvxn's Twitter accounts from this time period suggests they were engaged in some sort of online dispute and it appears that Brady sent the notices of alleged infringement for the improper purpose of inducing Cxlvxn to submit a counter notification, thereby exposing his home address.

33. Cxlvxn submitted a counter notification on July 4th, 2019. On July 10th, he announced via Twitter that he had been the victim of a swatting scheme that day. "Swatting" is the act of making a bogus call to emergency services in an attempt to bring about the dispatch of a large number of armed police officers to a particular address.

34. Given the timing of (i) Defendant Brady's online dispute with Cxlvxn, (ii) Brady's false copyright claims against Cxlvxn; (iii) Brady's receipt of Cxlvxn's true home address via

Cxlvxn's counter-notification; and (iv) the reported swatting incident, it appears Brady used the personal information gained through his abuse of the DMCA process to engage in swatting.

35. Defendant Brady's false complaints were all submitted using YouTube's complaint webform, and thus Brady, with each complaint, checked the box that reads, "I acknowledge that under Section 512(f) of the DMCA any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability for damages."

## FIRST CAUSE OF ACTION

Violation of 17 U.S.C. § 512(f)

36. YouTube realleges each and every allegation set forth in Paragraphs 1 through 35, inclusive, and incorporates them by reference herein.

37. On at least two dozen occasions, Defendant Brady sent YouTube notices of alleged copyright infringement pursuant to the DMCA that contained knowing and material misrepresentations that videos posted by third parties to the YouTube service infringed his supposed copyrights.

38. YouTube, the service provider that received Defendant's bogus notifications of alleged infringement, relied upon Defendant's misrepresentations, removing or disabling access to the material Defendant falsely claimed to be infringing.

39. Defendant Brady has gone to great lengths to hide his unlawful conduct using at least fifteen different online identities, all of which YouTube traced back to him.

40. Defendant Brady's abusive behavior has caused YouTube to expend substantial sums on its investigation in an effort to detect and halt that behavior, and to ensure that its users do not suffer adverse consequences from it.

41. Defendant Brady has demonstrated that his abusive behavior will continue if left unchecked. In part because of Brady's constant attempts to mask his identity, YouTube may be unable to detect and prevent similar misconduct in the future. Injunctive relief is necessary to prevent irreparable harm to YouTube and to its users.

Wherefore, YouTube prays for relief as set forth below.

## PRAYER FOR RELIEF

YouTube prays:

42. For an award of compensatory damages in an amount to be proven at trial arising from Defendants' violation of 17 U.S.C. § 512(f);

43. For an award of its costs and reasonable attorneys' fees.

44. For preliminary and permanent injunctive relief barring Defendant Brady and all those in active concert with him from submitting notices of alleged infringement to YouTube that misrepresent that material on the YouTube service is infringing copyrights held or claimed to be held by Brady or anyone he claims to represent.

45. For such other, further, and different relief as the Court deems proper under the circumstances.

DATED: August 19, 2019

Respectfully submitted,

YOUTUBE, L.L.C.,

By: s/ Sam King
Sam King, #19442
Erin R. Robak, #23407
McGILL, GOTSDINER,
WORKMAN & LEPP, P.C., L.L.O.
11404 West Dodge Road, #500
Omaha, NE  68154-2584
(402) 492-9200
Fax (402) 492-9222
SamKing@mgwl.com
ErinRobak@mgwl.com

AND

David H. Kramer, Calif. Bar No. 168452
WILSON, SONSINI,
GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 493-9300
Fax (650) 565-5100
DKramer@wsgr.com
*Pro Hac Vice Motion filed contemporaneously herewith*
Attorneys for Plaintiff
YOUTUBE, L.L.C.